UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>NEWMONT USA LIMITED AND DAWN MINING COMPANY, LLC,<br><br>    Defendants. | NO. CV-05-020-JLQ |
| DAWN MINING COMPANY, LLC,<br><br>    Third-party Plaintiff,<br><br>  vs.<br><br>ORTENCIA FORD and DONNELLY VILLEGOS,<br><br>    Third-party Defendants. | MEMORANDUM OPINION AND ORDER GRANTING THE MOTION OF PLAINTIFF UNITED STATES FOR PARTIAL SUMMARY JUDGMENT AS TO (1) COMMON ELEMENTS OF LIABILITY AS TO BOTH NEWMONT AND DAWN; AND (2) THE ISSUE OF WHETHER DAWN WAS AN OPERATOR AT THE MIDNITE MINE |

BEFORE THE COURT is the Motion of Plaintiff United States for Partial Summary Judgment as to: (1) Common Elements of Liability as to Both Newmont and Dawn; and (2) The Issue of Whether Dawn was an Operator at the Midnite Mine. (Ct. Rec. 134). Oral argument was heard on July 3, 2007. Assistant United States Attorney Paul Gormley argued on behalf of the United States of America. Mark W. Schneider

argued on behalf of Dawn Mining Company, LLC (hereinafter "Dawn").

The factual background for this matter has been recited in great detail in the court's prior orders addressing the parties' other motions for summary judgment, so the court need not reiterate the entire history of Dawn's operations at the Midnite Mine *in toto*. Therefore, the following is a brief summary of the undisputed facts relevant in deciding this motion.

**Background**

Dawn was incorporated in 1955 as part of an agreement between Newmont USA Limited (hereinafter "Newmont") and Midnite Mines, Inc. (United States' St. Fact ¶ 5). From 1955 to 1965 and from 1968 to 1981, Dawn operated the Midnite Mine, an open-pit uranium mine located on the Spokane Indian Reservation. (Id. ¶¶ 6, 28-30). Active mining operations ended in 1981. (Dawn's St. Fact ¶ 11). In 1990, the Bureau of Indian Affairs terminated Dawn's mining rights. (Id. ¶ 20). Currently, Dawn operates a water treatment plant and a water collection and management system at the mine pursuant to a 1991 order from the Bureau of Land Management. (United States' St. Fact ¶¶ 6, 10; Dawn's St. Fact ¶¶ 1, 29).

The 350-acre area physically disturbed by active mining consists of two open pits partially filled with contaminated water, four previously-mined pits filled with waste rock, seven or more stockpiles of ore and protore, multiple dump areas and piles of waste rock, and other areas. (United States' St. Fact ¶ 11). From these areas, there have been releases of hazardous substances, including cadmium, chromium, nickel, zinc, radium 226, uranium 234, uranium 238, polonium 210, copper, lead, lead 210. (Id. ¶¶ 14, 16-17). These releases have contaminated groundwater, surface water, sediments, and soils. (Id. ¶ 11).

Throughout the late 1990s and early 2000s, the United States Environmental Protection Agency (hereinafter "EPA"), with the assistance of other federal agencies, incurred costs performing an Expanded Site Investigation ("EIS") and a Remedial Investigation and Feasibility Study ("RI/FS") for the site. (United States' St. Fact ¶ 21).

1    The mine was added to the National Priorities List for remediation under CERCLA in
2    May of 2000.  65 Fed. Reg. 30,482 (May 11, 2000).  The EPA completed the RI/FS and
3    issued a proposed cleanup plan for public comment in September of 2005.  The Final
4    Record of Decision ("ROD") was issued in September of 2006.  (Id. ¶ 20-21).

5                                    **Standard of Review**

6              The purpose of summary judgment is to avoid unnecessary trials when there is no
7    dispute as to the material facts before the court.  *Northwest Motorcycle Ass'n v. United*
8    *States Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled
9    to summary judgment when, viewing the evidence and the inferences arising therefrom in
10   the light most favorable to the nonmoving party, there are no genuine issues of material
11   fact in dispute.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252
12   (1986).  While the moving party does not have to disprove matters on which the opponent
13   will bear the burden of proof at trial, they nonetheless bear the burden of producing
14   evidence that negates an essential element of the opposing party's claim and the ultimate
15   burden of persuading the court that there is no genuine issue of material fact. *Nissan Fire*
16   *& Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

17             Once the moving party has carried its burden, the opponent must do more than
18   simply show there is some metaphysical doubt as to the material facts.  *Matsushita Elec.*
19   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975).  In meeting this burden,  the
20   "adverse party may not rest upon the mere allegations or denials of the adverse party's
21   pleadings, but the adverse party's response, by affidavits or as otherwise provided in this
22   rule, must set forth specific facts showing that there is a genuine issue for trial." *Miller v.*
23   *Glenn Miller Productions*, 454 F.3d 975, 987 (9th Cir. 2006) (quoting Fed. R. Civ. P.
24   56(e)).

25                                         **Analysis**

26             To establish liability under CERCLA, the United States must prove: (1) the site is a
27   "facility;" (2) there has been a release, or a threatened release of hazardous substances
28   from the facility; (3) the government has incurred costs in response to the release or

ORDER - 3

threatened release; and, (4) the defendant falls within one of the four classes of responsible persons. *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir.1998).  The United States' motion has two goals related to the foregoing elements.  First, the United States seeks to establish three common elements of liability as to both Dawn and Newmont.  Second, the United States seeks to show that Dawn was and continues to be an "operator" of the Midnite Mine, thereby proving the fourth element and establishing Dawn's liability as a responsible party.

## I.  Common Elements of Liability for Dawn and Newmont:

The first part of the United States' motion seeks to establish the following three elements of liability for both Dawn and Newmont: (1) Midnite Mine is a "facility;" (2) there have been releases of hazardous substances from Midnite Mine; and (3) those releases have caused the United States to incur some response costs.  Both Newmont and Dawn concede all three elements.  (Ct. Rec. 157, pg. 2; Ct. Rec. 158, pg. 2 n.1).  Accordingly, this portion of the United States' motion for partial summary judgment is **GRANTED.**

## II.  Dawn as Operator of the Midnight Mine:

The second part of the United States' motion seeks to establish that Dawn was and continues to be an "operator" of the Midnite Mine.  In part, 42 U.S.C. § 9607(a) extends liability to "the owner and operator of a  . . . facility," and to "any person who at the time of disposal of any hazardous substance . . . operated any facility at which such hazardous substances were disposed of."  42 U.S.C. §§ 9607(a)(1)-(2).  The statute defines a facility's "operator" as "any person ... operating" the facility.  42 U.S.C. § 9601(20)(A)(ii).  Because the statutory definition is not particularly useful, the United States Supreme Court, in *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998), defined "operator" as "someone who directs the workings of, manages, or conducts the affairs of a facility . . . [and] must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."

ORDER - 4

Notably, Dawn concedes that it operated Midnite Mine from 1956 to 1964 and again from 1969 to 1981. (Ct. Rec. 158, pg. 3). However, Dawn disputes that it is a current operator of the Midnite Mine because its control over the site is limited to running a water treatment plant and water collection system as ordered by the United States. Because liability under CERCLA is joint and several when the harm is indivisible, and at this stage of the litigation the parties have not addressed divisibility or apportionment, the distinction between past and present operator is immaterial for purposes of determining Dawn's liability as an operator of the Midnite Mine. *See United States v. Burlington N. & S. F. Rwy.*, 479 F.3d 1113, 1125 (9th Cir. 2007) (explaining that in the Ninth Circuit, "liability is joint and several when the harm is indivisible" and "a defendant may be held fully liable for the entire clean-up costs at a site despite . . . [being] responsible for only a fraction of the contamination" (citation and quotation omitted)); *cf. Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001) (explaining that a defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm or seek contribution from another potentially responsible party). Thus, as a past "operator," Dawn may be held liable without the court needing to determine whether Dawn is a current "operator" as well. *Id.*

Dawn does not raise any CERCLA-prescribed defenses to liability. Instead, Dawn's opposition to the motion consists of two affirmative defenses. First, Dawn argues that the United States' exclusive remedy regarding clean-up costs is under the mining leases. Second, Dawn argues that CERCLA, as applied to Dawn under these circumstances, violates the Takings Clause and the Due Process Clause by imposing unforeseen and unfair retroactive liability. Both defenses are without merit.

## A. The Leases as a Defense to CERCLA liability:

For various reasons, CERCLA has been described as a "black hole that indiscriminately devours all who come near it." *Long Beach Unified School Dist. v. Dorothy B. Goodwin Cal. Living Trust*, 32 F.3d 1364, 1366 (9th Cir. 1994). It expressly states that liability is imposed "notwithstanding any other provision or rule of law, and

subject only to the defenses set forth in Subsection (b) of this section."  42 U.S.C. § 9607(a).  Section 9607(b) provides that:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by--
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
>
> (4) any combination of the foregoing paragraphs.

42 U.S.C. 9607(b).  The foregoing are the exclusive defenses under CERCLA.  *See California ex. rel. California Dept. of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 672 (9th Cir. 2004) (stating that "every court of appeals that has considered the precise question whether [42 U.S.C. § 9607] permits equitable defenses has concluded that it does not, as the statutory defenses are exclusive . . . the three statutory defenses are the only ones available . . . traditional equitable defenses are not"); *see also Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1305 (11th Cir. 2002) (holding that a contract between the plaintiff and the city was not enforceable under CERCLA to bar recovery);  *Velsicol Chem Corp. v. Enenco., Inc.*, 9 F.3d 524, 530 (6th Cir. 1993) (stating that "[t]he clear language of . . . 42 U.S.C. § 9607(b), manifests

the congressional intent to foreclose any non-enumerated defenses to liability . . .").  In discussing the exclusion of non-enumerated defenses under CERLA, the Eighth Circuit stated: "We realize this [provision] can and does lead to harsh results, but we are obliged to enforce the law as Congress has written it, unless, of course, such law violates some provision of the Constitution."  *United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 484 n.5 (8th Cir. 1992).

Assuming, without finding, that the United States was actually a party to the leases, Dawn has not cited any authority wherein the United States' ability to bring a cost recovery action under CERCLA is limited by a contract between the United States and a potentially responsible party.  The leases' reclamation provisions are not a persuasive defense against CERCLA liability because § 9607(b) provides the exclusive list of defenses.

**B.  Unconstitutionality of Retroactive CERCLA Liability:**

Dawn relies upon *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) to challenge the constitutionality of imposing retroactive CERCLA liability.  Therein, a divided United States Supreme Court struck down retroactive application of the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701-22.  At issue was whether the Act's allocation formula that assigned the provision of employee retirement benefits (including guaranteed health care benefits established by a series of collective bargaining agreements in the 1970s) to employers that had left the industry before those agreements became operative was constitutional.  A plurality of four justices held that the Act, as applied to Eastern Enterprises, violated the Takings Clause of the Fifth Amendment.  *Id.* at 537-38.  In a concurring opinion, Justice Kennedy joined the plurality's judgment, but rejected its takings analysis in favor of a substantive due process approach.  *Id.* at 539-50 (Kennedy, J., concurring in the judgment and dissenting in part).  Dawn argues that the potential imposition of liability for an amount that could exceed $160 million in past and future response costs would likewise constitute an unlawful taking under the Fifth Amendment and would violate its right to substantive due process.

ORDER - 7

The Ninth Circuit has not addressed an *Eastern Enterprises*-type challenge to CERCLA, but those courts that have been asked to reconsider whether CERCLA's retroactive liability scheme is constitutional in light of *Eastern Enterprises* have "uniformly held that CERCLA continues to pass constitutional muster." *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 188-90 (2d Cir. 2003) (denying a constitutional challenge to "the retroactive application of CERLCA to [defendant's] waste disposal activities"); *see also United States v. Dico, Inc.*, 266 F.3d 864, 879-80 (8th Cir.2001) (denying a constitutional challenge to "the retroactive application of CERCLA to [defendant's] activities"); *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 550-53 (6th Cir.2001) (same); *United States v. Manzo*, 182 F. Supp. 2d 385, 407-08 (D.N.J.2000); *Combined Prop./ Greenbriar Ltd. P'ship v. Morrow*, 58 F. Supp. 2d 675, 677-82 (E.D. Va.1999); *United States v. Vertac Chem. Corp.*, 33 F. Supp. 2d 769, 784-85 (E.D. Ark.1998), *rev'd on other grounds sub nom. United States v. Hercules, Inc.*, 247 F.3d 706 (8th Cir.2001)).

For example, in *United States v. Dico, Inc.*, 266 F.3d 864, 879-80 (8th Cir. 2001), the defendant brought the same constitutional challenges Dawn does here and argued that *Eastern Enterprises* superceded the Eighth Circuit's prior decision in *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726 (8th Cir. 1986), which upheld the constitutionality of retroactive application of CERCLA under both the Due Process and Takings Clauses of the Fifth Amendment. The Court rejected the defendant's argument for two reasons. First, the Court noted that *Eastern Enterprises* has no precedential effect because "no single Fifth Amendment rationale commanded a majority of the Court's votes in *Eastern*." *Id.* at 880. Second, the Court reasoned that "the background and purpose of the Coal Industry Retiree Health Benefit Act differs greatly from that of CERCLA; Congress intended CERCLA to apply retroactively and acted purposefully to allocate the cost of hazardous waste cleanups sites 'to those who were responsible for creating the sites.'" *Id.* (quoting *Am. Premier Underwriters, Inc.*, 240 F.3d at 552).

1    Dawn has not cited and the court cannot locate any authority contrary to the

2    foregoing.  Accordingly, the court concludes that the retroactive application of CERCLA

3    liability continues to be both facially valid and is constitutional as applied to the

4    circumstances *sub judice*.

                                      **Conclusion**

5

6    Based upon the foregoing, the United States' Motion for Partial Summary as to: (1)

7    Common Elements of Liability as to Both Newmont and Dawn; and (2) The Issue of

8    Whether Dawn Was An Operator At The Midnite Mine (Ct. Rec. 134) is **GRANTED**.

9    **IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and

10   furnish copies to counsel.

11   **DATED** this 28th  day of August, 2007.

                         s/ Justin L. Quackenbush
12                   JUSTIN L. QUACKENBUSH
             SENIOR UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 9