IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON


UNITED STATES OF AMERICA

      Plaintiff,

      v.

DAWN MINING COMPANY, LLC
and NEWMONT USA LIMITED,

      Defendants.

CIVIL ACTION NO. CV-05-020-JLQ

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.     Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.    Parties Bound . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.     Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V.      General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI.     Performance of the Work By Settling Defendants . . . . . . . . . . . . . . . . . . . .

VII.    Remedy Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VIII.   Quality Assurance, Sampling, and Data Analysis . . . . . . . . . . . . . . . . . . . .

IX.     Access and Institutional Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

X.      Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XI.     EPA Approval of Plans, Reports, and Other Deliverables . . . . . . . . . . . . .

XII.    Project Coordinators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XIII.   Performance Guarantee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XIV.    Certification of Completion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XV.     Emergency Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XVI.    Payments for Response Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XVII.   Indemnification and Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XVIII.  Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XIX.    Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XX.     Stipulated Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXI.    Covenants by Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXII.   Covenants by Settling Defendants and Settling Federal Agencies . . . . .

XXIII.  Effect of Settlement; Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXIV.   Access to Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXV.    Retention of Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXVI.   Notices and Submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXVII.  Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXVIII. Appendices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXIX.   Community Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXX.    Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXXII.  Lodging and Opportunity for Public Comment . . . . . . . . . . . . . . . . . . . . . . .

XXXIII. Signatories/Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XXXIII. Final Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

B.      The United States in its complaint seeks, *inter alia*, reimbursement of costs incurred by EPA and the Department of Justice ("DOJ" ) for response actions at the Midnite Mine Superfund site ("Site"), together with accrued interest.

C.      Newmont USA Limited and Dawn Mining Company, LLC, have filed a counterclaim against the United States in this Court seeking contribution under Section 113(f)(1), 42 U.S.C. § 9613(f)(1) of CERCLA.

D.      In accordance with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP") and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Washington (the "State") by letter dated April 6, 2009, of negotiations with Potentially Responsible Parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

E.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Department of Interior (DOI) and the National Oceanic and Atmospheric Administration (NOAA) by letters dated April 6, 2009, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

F.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the United States arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.  The United States does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by Settling Defendants.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL") set forth at 40 C.F.R. Part 300, Appendix B, Table 1 by publication in the Federal Register on May 11, 2000 (65 FR 30482-88).

H.      In response to a release or a substantial threat of release of a hazardous substance at or from the Site, EPA commenced  a Remedial Investigation and Feasibility Study ("RI/FS") for the Site in 1999 pursuant to 40 C.F.R. § 300.430.

I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published a notice of the completion of the feasibility study and of the proposed plan on October 30, 2005 in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of

the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, EPA Region 10, based the selection of the response action.

       J.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 29, 2006, on which the Spokane Tribe of Indians ("Tribe") has given its concurrence.  The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

       K.      EPA issued an administrative order, U.S. EPA Docket No. CERCLA-10-2009-0026, pursuant to Section 106(a) of CERCLA to Settling Defendants dated November 7, 2008 and amended on November 18, 2008, ("106 Order") requiring Settling Defendants to perform certain remedial design and remedial actions set forth in the ROD issued for the Site.

       L.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

       M.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action set forth in the ROD and the Work to be performed by Settling Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

       N.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

       NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

       1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

       2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendants' responsibilities under this Consent Decree.

3.     Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" or "Decree"shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII ).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

The term "day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after February 28, 2011, in reviewing or developing plans, reports and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain or enforce Institutional Controls including,

but not limited to, the amount of just compensation), XV (Emergency Response), and Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Relations). Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to pay under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period between February 28, 2011 and the Effective Date. Future Response Costs do not include the costs billed to Settling Defendants under the 106 Order.

"Institutional Controls" shall mean Proprietary Controls and state, tribal or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Materials at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at the Site.

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls selected in the ROD, prepared in accordance with the SOW.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between February 28, 2011 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Midnite Mine Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site pursuant to this Consent Decree by EPA under Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through February 28, 2011, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW, as well as any performance standards established pursuant to the procedures set forth in the SOW for

modifying existing performance standards or establishing new performance standards.

"Plaintiff" shall mean the United States of America.

"Pre-Achievement Operation and Maintenance (O&M)" shall mean all operation and maintenance activities required for the Remedial Action to achieve Performance Standards, as provided under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the SOW, and maintenance, monitoring and enforcement of Institutional Controls as provided in the ICIAP, until Performance Standards are met.

"Post-Achievement Operation and Maintenance (O&M)" shall mean all activities required to maintain the effectiveness of the Remedial Action after Performance Standards are met, as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the SOW, and maintenance, monitoring and enforcement of Institutional Controls after Performance Standards are met, as provided in the ICIAP.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Real Property" shall mean any real property that is located within the Site.

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 29, 2006, by the Regional Administrator, EPA Region 10, or her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Defendants are required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final Remedial Design and Remedial Action Work Plans, and other plans approved by EPA including Pre-Achievement O&M and implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, Post-Achievement O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Dawn Mining Company, LLC and Newmont USA Limited.

"Settling Defendants' Future Response Costs" shall mean the necessary costs of response consistent with the NCP that Settling Defendants incur and pay after February 28, 2011 to perform Work required under this Consent Decree, and shall include the Future Response Costs that Settling Defendants pay to EPA under Paragraph 52(a) of this Consent Decree.

"Settling Defendants' Past Response Costs" shall mean the costs that Settling Defendants incurred or paid for response actions at the Site through February 28, 2011.

"Settling Federal Agencies" shall mean those departments, agencies, and instrumentalities of the United States identified in Appendix D, which are resolving any claims which have been or could be asserted against the United States with regard to this Site as provided in this Consent Decree.

"Site" shall mean those portions of  the Midnite Mine Superfund site described as Operable Unit 1 and Operable Unit 2 in the Record of Decision and generally depicted on the map in Figure 1-2 of the ROD, attached as Appendix C to this Decree, including the Mined Area, the Mining Affected Area, and the Haul Route.  The Site shall also include those portions of Blue Creek and the Blue Creek Delta that are within the area of the contingent remedy selected in the ROD.  The "Site" does not include the Dawn uranium mill in Ford, Washington or roads outside the reservation boundary leading to the mill.

"State" shall mean the State of Washington.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Pre- and Post-Achievement O&M at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment conveyance, or other disposition of any interest by operation of law or otherwise.

"Tribe" shall mean the Spokane Tribe of Indians.

"United States" shall mean the United States of America and each department, agency and instrumentality of the United States, including EPA and the Settling Federal Agencies.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities and obligations Settling Defendants are required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

"106 Order SOW" shall mean the statement of work attached as an appendix to administrative order, U.S. EPA Docket No. CERCLA-10-2009-0026, issued by EPA pursuant to Section 106(a) of CERCLA to the Settling Defendants dated November 7, 2008 and amended on November 18, 2008, ("106 Order").

## V. GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Defendants, to pay response costs of the United States, and to resolve the claims of the United States against Settling Defendants and the claims of Settling Defendants which have been or could have been asserted against the United States with regard to this Site as provided in this Consent Decree.

6.    Commitments by Settling Defendants and Settling Federal Agencies.

a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  All remaining requirements of the 106 Order SOW have been incorporated in the Consent Decree SOW.  Settling Defendants have paid the United States for costs associated with the 106 Order through February 28, 2011. The requirement to continue to reimburse the United States for oversight costs associated with the 106 Order shall continue.  Except with respect to such payment obligations under the 106 Order, that Order shall terminate upon entry of this Consent Decree.  Settling Defendants shall pay the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.  The United States, on behalf of Settling Federal Agencies, shall pay EPA for Past Response Costs and Settling Defendants for Settling Defendants' Past Response Costs and Settling Defendants' Future Response Costs as provided in this Consent Decree.

b.    The obligations of Settling Defendants to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several.  In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to implement any requirement of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

7.    Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state and tribal laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal, state, and tribal environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C.§ 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the

contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal, tribal, or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

   b. Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8(a) and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

   c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

<h3 style="text-align:center;">VI.  <u>Performance of the Work By Settling Defendants</u></h3>

   9. <u>Selection of Supervising Contractor</u>.

   a. All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the Tribe.  Within 20 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA and the Tribe in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.  If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give notice to EPA and the Tribe and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the Tribe, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

   b. If  one or more Settling Defendant wishes to perform Pre-Achievement and/or Post-Achievement O&M rather than using the Supervising Contractor selected pursuant to Paragraph 9(a), Settling Defendant(s) may send a written request to EPA.  Such a request shall notify EPA and the Tribe in writing of the name, title, and qualifications of Settling Defendant(s) requesting to perform the Pre-Achievement and/or Post-Achievement O&M.  The Settling Defendant(s) requesting to perform Pre-Achievement and Post-Achievement O&M shall demonstrate that they have a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and

Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of their Quality Management Plan ("QMP"). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed regarding the request. If at any time thereafter, Settling Defendants propose a different entity to perform Pre-Achievement and/or Post-Achievement O&M, Settling Defendants shall give notice to EPA and the Tribe and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the Tribe, before the new entity performs, directs, or supervises any Work under this Consent Decree.

           c.        If EPA disapproves a proposed Supervising Contractor or Settling Defendant(s) request to perform Pre-Achievement and/or Post-Achievement O&M, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA and the Tribe a list of contractors including the qualifications of each contractor, that would be acceptable to Settling Defendants within 30 days of receipt of EPA's disapproval of the contractor previously proposed, or of receipt of the Settling Defendant(s) request to perform Pre-Achievement and/or Post-Achievement O&M. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the Tribe of the name of the contractor selected within 21 days of EPA's authorization to proceed.

           d.        If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendants may seek relief under Section XVIII (Force Majeure).

       10.    <u>Remedial Design</u>.

           a.        Within 60 days after (i) the Effective Date or (ii) EPA's issuance of an authorization to proceed pursuant to Paragraph 9, whichever occurs later, Settling Defendants shall submit to EPA and the Tribe a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree.

           b.        Upon approval of the Remedial Design Work Plan by EPA, and after a reasonable opportunity for review and comment by the Tribe, Settling Defendants shall implement the Remedial Design Work Plan. The Settling Defendants shall submit to EPA and the Tribe for review and comment, and for approval by EPA pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables), all plans, reports and other deliverables required under the approved Remedial Design Work Plan, or any other approved deliverable. Such submissions shall be timely made in accordance with the schedules in the SOW, the approved Remedial Design Work Plan, other approved deliverables, or other directives from

EPA.  Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

11.    Remedial Action.

a.    Within 60 days after EPA's approval of the final (100%) design submission, Settling Defendants shall submit to EPA and the Tribe a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan").  The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and the ICIAP and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan as approved by EPA.  Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree.

b.    Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the Tribe, Settling Defendants shall implement the activities required under the Remedial Action Work Plan.  The Settling Defendants shall submit to EPA and the Tribe for review and comment, and for approval by EPA pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables), all plans, reports and other deliverables required under the SOW, the approved Remedial Action Work Plan, or any other approved deliverable.  Such submissions shall be timely made in accordance with the schedules in the SOW, the approved Remedial Action Work Plan, other approved deliverables, or other directives from EPA  Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

12.    Settling Defendants shall continue to implement the Remedial Action until the Performance Standards are achieved. Settling Defendants shall implement Post-Achievement O&M for so long thereafter as is required by this Consent Decree.

13.    Modification of SOW or Related Work Plans.

a.    If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendants of such modification.  If Settling Defendants object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 67 (Record Review).

b.    The SOW and/or related work plans shall be modified: (i) in accordance with the modification issued by EPA; or (ii) if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendants shall implement all work required by such modification.  Settling Defendants shall incorporate the modification into the Remedial Design or Remedial Action work Plan under Paragraph 10 or 11, as appropriate.

c.    Nothing in this Paragraph shall be construed to limit EPA's authority to

require performance of further response actions as otherwise provided in this Consent Decree.

14.    Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.    <u>Off-Site Shipment of Waste Material.</u>

a.    Settling Defendants may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.    Settling Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator.  This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed 10 cubic yards.  The written notice shall include the following information, if available: (i) the name and location of the receiving facility; (ii) the type and quantity of Waste Material to be shipped; (iii) the schedule for the shipment; and (iv) the method of transportation.  Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Settling Defendants shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. <span style="font-variant:small-caps">Remedy Review</span>

16.    <u>Periodic Review</u>.  Settling Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121 of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

17.    <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

18.    <u>Opportunity To Comment</u>.  Settling Defendants will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121 of CERCLA.  If required by Sections 113(k)(2) or 117 of CERCLA, the public, including Settling Defendants, will be provided with an opportunity to submit written comments for the record during the comment period.

19.    <u>Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Site, EPA may require Settling Defendants to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 84

or Paragraph 85 (United States' Pre- and Post-Certification Reservations are satisfied.  Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 84 or Paragraph 85 of Section XXI (Covenants by Plaintiff) are satisfied, (b) EPA's determination that the Remedial Action is not protective of human health and the environment, or (c) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 67 (Record Review).

20.    Submissions of Plans.  If Settling Defendants are required to perform further response actions pursuant to Paragraph 19, they shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by Settling Defendants).  Settling Defendants shall implement the approved plan in accordance with this Consent Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.    Quality Assurance.

a.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.    Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the Tribe, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Defendants shall ensure that EPA and Tribe personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the Tribe, Settling Defendants may use other analytical methods which are as stringent as or more stringent than the Contract Lab Program-approved methods.  Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling

Defendants shall use only laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, Settling Defendants shall allow split or duplicate samples to be taken by EPA or the Tribe or their authorized representatives.  Settling Defendants shall notify EPA and the Tribe not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and the Tribe shall have the right to take any additional samples that EPA or the Tribe deems necessary.  Upon request, EPA and the Tribe shall allow Settling Defendants to take split or duplicate samples of any samples taken as part of the United States' oversight of Settling Defendants' implementation of the Work.

23.     Settling Defendants shall submit to EPA and the Tribe one copy each of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

24.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

IX.  ACCESS AND INSTITUTIONAL CONTROLS

25.     Where access and/or land/water use restrictions are needed, except where the ICIAP specifies that the particular access and/or land/water use restriction will be addressed solely through government controls described in Paragraph 27 below, Settling Defendants shall use best efforts to secure one or more of the following as set forth in the ICIAP,:

a. agreements, with the consent and/or approval where required by law, of the Tribe, other owners of real property within the Site, and/or the United States Secretary of the Interior, to provide access for the United States and Settling Defendants, and their representatives, contractors and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations regarding contamination at or

*United States v. Dawn and Newmont*
*Consent Decree Page 15*

near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 88 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendants' compliance with the Consent Decree;

(10)    Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)    Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

b.  agreements, with the consent and/or approval where required by law, of the Tribe, other owners of real property within the Site, and/or the United States Secretary of the Interior, enforceable by the United States, to refrain from using the Site in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.  The agreement shall include land/water use restrictions set forth in the ROD and/or ICIAP; and

c.  appropriately executed and recorded Proprietary Controls, with the consent and/or approval where required by law, of the Tribe, other owners of real property within the Site, and/or the United States Secretary of the Interior, that (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 25(a), and (ii) grant the right to enforce any land/water use restrictions set forth in the ROD and/or ICIAP.

(1)     The Proprietary Controls shall be granted to one or more of the following, as determined by EPA: (i) the United States and its representatives, (ii) Settling Defendants and their

representatives, and/or (iii) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA is a "third party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Control without acquiring an interest in real property. If any Proprietary Controls are granted to any Settling Defendants pursuant to this Paragraph 25(c)(1)(ii), then such Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(2)     In accordance with the schedule set forth in the ICIAP, Settling Defendants shall use best efforts to submit to EPA for review and approval regarding such property: (i) draft Proprietary Controls that are enforceable under law; and (ii) evidence showing the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

(3)     In accordance with the schedule set forth in the ICIAP, after EPA's approval and acceptance of the Proprietary Controls, Settling Defendants shall finalize the Proprietary Controls in accordance with the ICIAP and any applicable laws or regulations.

26.     For purposes of Paragraph 25, "best efforts" includes the payment of reasonable sums of money, as determined by third party appraisers of the fair market value of the encumbered property, to obtain access, an agreement to restrict land/water use and/or a Proprietary Control, and/or an agreement to release or subordinate a prior lien or encumbrance. Any such appraisals shall be paid for by Settling Defendants. If Settling Defendants have not, in accordance with the schedule contained in the ICIAP, (a) obtained agreements to provide access, restrict land/water use or finalized Proprietary Controls, as required by  Paragraph 25(a), 25(b), or 25(c), or the ICIAP; or (b) obtained, pursuant to Paragraph 25(c) and 25(c)(2), agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 25 and the ICIAP. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary

Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation

27.     If EPA determines that Institutional Controls in the form of regulations, Tribal statutes, zoning restrictions, or other governmental controls are needed, Settling Defendants shall cooperate with EPA's efforts to secure and ensure compliance with such governmental controls.

28.     Notwithstanding any provision of the Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.  The United States recognizes that the Site is located within the Spokane Indian Reservation and that various Institutional Controls identified this Section IX of the Consent Decree may require the approval of the United States.  The United States agrees to cooperate, as it deems appropriate, with the Settling Defendants in their efforts to secure the necessary Institutional Controls.

X. REPORTING REQUIREMENTS

29.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and the Tribe 1 copy each of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all plans, reports and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the schedule for implementation of the Work, and a description of efforts made in the previous month to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA during the previous month; and (g) describe all activities undertaken pursuant to Paragraph 110 during the previous month and those to be undertaken in the next six weeks. Settling Defendants shall submit these progress reports to EPA and the Tribe by the tenth day of every month following the Effective Date of this Consent Decree until EPA notifies Settling Defendants pursuant to Paragraph 48(b) of Section XIV (Certification of Completion).  If requested by EPA, Settling Defendants shall also provide briefings for EPA and the Tribe to discuss the progress of the Work.

30.     Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.  Where seven days notice is infeasible, Settling Defendants shall notify EPA as soon as they anticipate a change in the schedule.  Nothing in this Paragraph shall affect Settling

Defendants' obligations under Paragraph 61.

31.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 10, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

32.     Within 20 days after a report is due to EPA under the preceding paragraph, Settling Defendants shall furnish to EPA and the Tribe a written report, signed by Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

33.     Except for monthly reports due under Paragraph 29 of this Consent Decree, Settling Defendants shall submit two (2) copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Defendants shall simultaneously submit 1 copy of all such plans, reports, data, and other deliverables to the Tribe.  Settling Defendants shall submit in electronic form all portions of any deliverables Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

34.     All deliverables submitted by Settling Defendants to EPA which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendants.

XI.  EPA APPROVAL OF PLANS, REPORTS AND OTHER DELIVERABLES

35.     Initial Submissions.

a.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the Tribe, shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) disapprove, in whole or in part, the submission; or (iv) any combination of the foregoing.

b.     EPA also may modify the initial submission to cure deficiencies in the submission if: (i) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (ii) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

36.    <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 35(a)(iii) or (iv), or if required by a notice of approval upon specified conditions under Paragraph 35(a)(ii), Settling Defendants shall, within 28 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing.

37.    <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 35(b)(ii) or 36 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 70.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendants' submissions under this Section.

38.    <u>Implementation</u>.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 35 or 36, of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 35 or 36 shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII.  Project Coordinators

39.    Within twenty (20) days of lodging this Consent Decree, Settling Defendants and EPA will notify each other and the Tribe, in writing, of the name, address, telephone number and email address of their respective designated Project Coordinators and Alternate Project Coordinators.  The Parties anticipate that the Tribe will notify the Parties in writing of the name, address, telephone number and email address of its designated Project Coordinator and Alternate Project Coordinator.  If one of the Party's Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties and the Tribe at least five (5) working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  The Parties anticipate that they will receive the same notice with respect to any changes to the Tribe's Project Coordinator or Alternate Project Coordinator.  Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Settling Defendants' Project Coordinator shall not be an attorney for any Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

40.    Plaintiff may designate other representatives, including, but not limited to, EPA and Tribal employees, and federal and Tribal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

41.    EPA's Project Coordinator and Settling Defendants' Project Coordinator will meet in person or telephonically on a monthly basis unless otherwise agreed by EPA's Project Coordinator.

## XIII.  PERFORMANCE GUARANTEE

42.    In order to ensure the full and final completion of the Work, Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of $193 million, for the benefit of EPA (hereinafter "Estimated Cost of Work").  The performance guarantee shall consist of the following:

a.    Within 10 days following payment on behalf of Settling Federal Agencies of $42 million to Settling Defendants in accordance with Paragraph 51(c), Settling Defendants shall deposit that full amount into a trust fund that is governed by a Trust Agreement in substantially the same form as Appendix E (Trust Agreement).  Settling Defendants shall have the right to reimbursement of funds from that account as provided in the Trust Agreement;

b.    The performance guarantee for the remaining $151 million, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms:

i.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties of federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

ii.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a federal or state agency;

iii.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a federal or state agency; or

iv.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a federal or state agency.

43.    Settling Defendants have selected, and EPA has found satisfactory, as an initial performance guarantee, pursuant to Paragraph 42(b), in the form attached hereto as Appendix F. Within 30 days after the Effective Date of this Consent Decree, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee legally binding in a form substantially identical to the documents attached hereto as Appendix F, and such performance guarantee shall thereupon be fully effective.  Within 45 days of the Effective Date of this Consent Decree, Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee legally binding to the EPA Remedial Project Manager in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree and to the United States and EPA and the Tribe as specified in Section XXVI (Notices and Submissions). Upon submission of such instruments to EPA, Settling Defendants may terminate the existing financial assurance provided under the Order for Phase 1 Remedial Design and Remedial Action, EPA Docket No. CERCLA-10-2009-0026.

44.    In the event that EPA determines at any time that a performance guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 42(b) of this Consent Decree that satisfies all requirements set forth in this Section XIII; provided, however, that if any Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Settling Defendants shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Defendants in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed  60 days.  On day 30, Settling Defendant shall provide to EPA a status report on its efforts to obtain the revised or alternative form of guarantee.  In seeking approval for a revised or alternative form of performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 46(b)(ii) of this Consent Decree.  Settling Defendants' inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

45.    Funding for Work Takeover.  The commencement of any Work Takeover pursuant to Paragraph 88 shall trigger EPA's right to receive the benefit of any performance guarantee provided pursuant to Paragraph 42 and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee, whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the

commencement of any Work Takeover, if for any reason EPA is unable to secure the resources guaranteed under any such performance guarantee, whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, Settling Defendants shall within 10 days of a written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the remaining Work as of such date, as determined by EPA.  At any time following a Work Takeover pursuant to Paragraph 88, Settling Defendants may submit a petition seeking EPA's authorization for Settling Defendants to resume performance of the Work.  Any decision made by EPA on Settling Defendants' petition, including, but not limited to, any conditions for Settling Defendants' resumption of performance of the Work, or any refund of any of the performance guarantee funds obtained by EPA pursuant to this Paragraph, shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

      46.    Modification of Amount and/or Form of Performance Guarantee

        a.   Reduction of Amount of Performance Guarantee.  If Settling Defendants believe that the estimated cost of completing the Work has diminished below the amount of the then approved performance guarantee, Settling Defendants may, within 30 days of any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work.  Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated.  In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 46(b)(ii) for requesting a revised or alternative form of performance guarantee, except as specifically provided in Paragraph 46(a).  If EPA decides to accept Settling Defendants' proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in the Settling Defendants' written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Settling Defendants of such decision in writing.  Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 46(b)(ii).  In the event of a dispute, Settling Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).  No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 44 or 46(b) of this Consent Decree.

b.    Change of Form of Performance Guarantee.

(i)    If, after the Effective Date, Settling Defendants desire to change the form or terms of the performance guarantee provided pursuant to Paragraph 42(b), Settling Defendants may, within 30 days of any anniversary date of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of that performance guarantee.  The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 46(b)(ii).  Settling Defendants may only propose changing the form of the performance guarantee to one of the alternatives set forth in Paragraph 42(b).  If EPA denies Settling Defendants' petition to change the form of the performance guarantee, Settling Defendants may invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) to dispute the form (but not the specific terms) of the performance guarantee provided that Settling Defendants shall maintain an EPA-approved performance guarantee during the period of dispute resolution.  This paragraph does not apply to the performance guarantee provided pursuant to Paragraph 42(a), which may only be in the form of a trust fund.  Any dispute under this Paragraph shall be subject to the standard of review set forth in Paragraph 67(d).

(ii)    Settling Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA which shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Defendants shall submit such proposed revised or alternative performance guarantee to the EPA Remedial Project Manager in accordance with Section XXVI ("Notices and Submissions").  EPA will notify Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within fifteen days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee shall thereupon be fully effective.  Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee legally binding to the EPA within thirty days of receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI ("Notices and Submissions") and to the United States and EPA and the Tribe as specified in Section XXVI.

c.    Release of Performance Guarantee.  Settling Defendants shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph.  If Settling Defendants receive written notice from EPA in accordance with Paragraph 48 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the performance guarantee provided pursuant to this Section.  In the event of a dispute, Settling Defendants may release,

cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

XIV.  CERTIFICATION OF COMPLETION

47.     Completion of the Remedial Action.

a.     Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been achieved, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA and the Tribe.  If, after the pre-certification inspection, Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been achieved, they shall submit a written report requesting certification to EPA for approval, with a copy to the Tribe, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) within 30 days of the inspection.  In the report, a registered professional engineer and Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the Tribe, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy set forth in the ROD.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the Tribe, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Defendants' remaining obligations under this Consent Decree.

48.     Completion of the Work.

a.      Within 90 days after Settling Defendants conclude that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA and the Tribe.  If, after the pre-certification inspection, Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall contain the statement set forth in Paragraph 47(a), signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator.  If, after review of the written report, EPA, after reasonable opportunity for review and comment by the Tribe, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy set forth in the ROD.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendants and after a reasonable opportunity for review and comment by the Tribe, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendants in writing.

## XV.  EMERGENCY RESPONSE

49.     If any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 50, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Defendants shall notify the EPA Emergency

Response Unit, Region 10.  Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action under Section XVI (Payments for Response Costs).

50.    Subject to Section XXI (Covenants by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States to a) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XVI.  PAYMENTS FOR RESPONSE COSTS

51.    Payments for Past Response Costs.

a.    Payment by Settling Defendants to EPA for Past Response Costs.

(i)    Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $18,741,647.79 in payment for Past Response Costs.  Payment shall be made in accordance with Paragraphs 54(a) and 54(c) (Payment Instructions).

(ii)    The total amount to be paid by Settling Defendants pursuant to Paragraph 51(a)  shall be deposited by EPA in the Midnite Mine Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

b.    Payment by Settling Federal Agencies to EPA for Past Response Costs.

(i)    As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall pay to EPA $6,931,842.34 in payment of Past Response Costs.

(ii)    The total amount to be paid by Settling Federal Agencies pursuant to Paragraph 51(b) shall be deposited by EPA in the Midnite Mine Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

(iii)    Interest.  In the event that any payment required by Paragraph 51(b) is not made within 120 days of the Effective Date, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 121st day after the Effective Date and accruing through the date of payment.

c.  Payment by Settling Federal Agencies to Settling Defendants for Past Response Costs.

(i)      As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall pay to Settling Defendants $4,815,186.84 in payment of Settling Defendants' Past Response Costs by Automated Clearing House Electronic Funds Transfer in accordance with instructions provided by Settling Defendants.

(ii)     Interest.  In the event that the payment required by Paragraph 51(c) is not made within 120 days of the Effective Date or the date that Settling Defendants provide proper instructions for the payment, whichever is later, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 121st day after the later of the Effective Date and the date that Settling Defendants provide proper payment instructions.

52.    Payments for Future Response Costs.

a.    Payment by Settling Defendants to EPA for Future Response Costs. Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP as follows:

(i)      On a periodic basis, EPA will send Settling Defendants a bill requiring payment that includes a prepared cost summary, currently known as Superfund Cost Recovery Package Imaging Online System (SCORPIOS), which includes direct and indirect costs incurred by EPA and its contractors, and a DOJ case cost summary.  Settling Defendants shall make all payments within 45 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 55, in accordance with Paragraphs 54(b) and 54(c) (Payment Instructions for Settling Defendants).

(ii)     The total amount to be paid by Setting Defendants pursuant to Paragraph 52(a)  shall be deposited in the Midnite Mine Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

b.    Payment by Settling Federal Agencies to Settling Defendants for Future Response Costs.

(i) As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall pay to Settling Defendants $42,000,000.00 in payment of Settling Defendants' Future Response Costs by Automated Clearing House Electronic Funds Transfer in accordance with instructions provided by Settling Defendants.

(ii)     Interest.  In the event that the payment required by Paragraph 52(b) is not made within 120 days of the Effective Date or the date that Settling Defendants provide proper instructions for the payment, whichever is later, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 121st day after the later of the Effective Date and the date that Settling

Defendants provide proper payment instructions.

53.    The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the United States on behalf of the Settling Federal Agencies under this Consent Decree can only be paid from appropriated funds legally available for such purpose.  Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.


54.    <u>Payment Instructions for Settling Defendants</u>.

a.    <u>Instructions for Past Response Costs Payments</u>.  All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 54(a) shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, and in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Washington after the Effective Date.  The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

> Ralph Gahtan
> Newmont USA Limited
> 6363 South Fiddlers Green Circle
> Greenwood Village, CO 80111
> Telephone: (303) 837-6075
> Email: ralph.gahtan@newmont.com

on behalf of Settling Defendants.  Settling Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change in accordance with Section XXVI (Notices and Submissions).

b.    <u>Instructions for Future Response Costs Payments and Stipulated Penalties</u>.  All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 54(b) shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York  NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

c.    Instructions for All Payments.  All payments made under Paragraphs 54(a) or 54(b) shall reference the CDCS Number, EPA Site/Spill ID Number 10 2B and DOJ Case Number 90-11-3-1479 .  At the time of any payment required to be made in accordance with Paragraphs 54(a) or 54(b), Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XXVI (Notices and Submissions) and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the CDCS Number, Spill/Site ID Number and DOJ Case Number.

55.    Settling Defendants may contest payment of any Future Response Costs billed under Paragraph 52(a) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specified provision or provisions of the NCP.  Such objection shall be made in writing within 45 days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  Upon request for supporting documentation, EPA shall provide Settling Defendant with supporting documentation of its costs consistent with EPA policy.  In the event of an objection, Settling Defendants shall pay all uncontested Future Response Costs to the United States within 45 days of Settling Defendants' receipt of the bill requiring payment.  Simultaneously, Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Washington and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, Settling Defendants shall pay the sums due (with accrued interest) to the United States within 5 days of the resolution of the dispute.  If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within 5 days of the resolution of the dispute. Settling Defendants shall be disbursed any balance of the escrow account.  All payments to the United States under this Paragraph shall be made in accordance with Paragraph 54(b) and 54(c).  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendants' obligation to reimburse the United States for Future Response Costs.

56.    Interest.  In the event that any payment for Past Response Costs or for Future Response Costs required to be paid by Settling Defendants under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance.  The Interest to be paid by Settling Defendants on Past Response Costs under this Paragraph shall begin to accrue on

the Effective Date. The Interest to be paid by Settling Defendants on Future Response Costs shall begin to accrue on the date of receipt of the bill. The Interest shall accrue through the date of Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX.

### XVII. INDEMNIFICATION AND INSURANCE

57.    Settling Defendants' Indemnification of the United States.

a.    The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendants shall indemnify, save and hold harmless the United States, and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither Settling Defendants nor any such contractor shall be considered an agent of the United States.

b.    The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 57, and shall consult with Settling Defendants prior to settling such claim.

58.    Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

59.    No later than 15 days before commencing any on-Site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of

*United States v. Dawn and Newmont*
*Consent Decree Page 31*

the Remedial Action pursuant to Paragraph 47(b) of Section XIV (Certification of Completion) commercial general liability insurance with limits of $25 million dollars, for any one occurrence, and automobile liability insurance with limits of $5 million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year by the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII.  FORCE MAJEURE

60.    "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure and best efforts to address the effects of any potential Force Majeure (1) as it is occurring and (2) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

61.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Office of Environmental Cleanup, EPA Region 10, within 10 days of when Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, Settling Defendants shall provide in writing to EPA and the Tribe an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements

*United States v. Dawn and Newmont*
*Consent Decree Page 32*

shall preclude Settling Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

62.     If EPA, after a reasonable opportunity for review and comment by the Tribe, agrees that the delay or anticipated delay is attributable to a Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure will be extended by EPA, after a reasonable opportunity for review and comment by the Tribe, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA, after a reasonable opportunity for review and comment by the Tribe, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendants in writing of its decision.  If EPA, after a reasonable opportunity for review and comment by the Tribe, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure.

63.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 60 and 61.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.  DISPUTE RESOLUTION

64.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

65.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall be 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

66.     Statement of Position

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding

unless, within 21 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendants.  The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 67 or Paragraph 68.

      b.    Within 21 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 67 or 68.  Within 14 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

      c.    If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 67 or 68, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 67 and 68.

      67.    <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

      a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

      b.    The Director of the Office of Environmental Cleanup, EPA Region 10, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 67(a).  This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 67(c) and 67(d).

      c.    Any administrative decision made by EPA pursuant to Paragraph 67(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file

a response to Settling Defendants' motion and, if permitted by the applicable local rules, Settling Defendants may file a reply.

d.    In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Director of the Office of Environmental Cleanup Office is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 67(a).

68.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 66, the Director of the Office of Environmental Cleanup, EPA Region 10, will issue a final decision resolving the dispute.  The Director's decision shall be binding on Settling Defendants unless, within 21 days of receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion and, if permitted by the applicable local rules, Settling Defendants may file a reply.

b.    Notwithstanding Paragraph M (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

69.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 77.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

70.    Settling Defendants shall be liable for stipulated penalties in the amount set forth in Paragraphs 71 and 72 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of all payments and activities required under this Consent Decree or any plan, report or other deliverables approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

71.    Stipulated Penalty Amounts - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables).

The following stipulated penalties shall accrue per violation per day for any noncompliance of Work specified in any work plan required under this Consent Decree and/or SOW:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,000.00 | 1st through 14th day |
| $ 7,000.00 | 15th through 30th day |
| $ 16,000.00 | 31st day and beyond |

72.    Stipulated Penalty Amounts - Plans, Reports, and other Deliverables.

The following stipulated penalties shall accrue per violation per day for: (1) failure to submit timely plans, reports or deliverables required by this Consent Decree and/or SOW; or (2) a material defect in such plan, report, or deliverable, which constitutes a lack of compliance under Paragraph 37:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 4,000.00 | 1st through 14th day |
| $ 6,000.00 | 15th through 30th day |
| $ 10,000.00 | 31st day and beyond |

73.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 88 (Work Takeover), Settling Defendants shall be liable for a stipulated penalty in the amount of $10,000,000.00.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 45 (Funding for Work Takeover) and 88 (Work Takeover).

74.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (b) with respect to a decision by the Director of the Office of Environmental Cleanup, EPA Region 10, under Paragraph 67(b) or 68(a) of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of

separate penalties for separate violations of this Consent Decree.

75.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance.  EPA may send Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

76.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period.  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraphs 54(b) and 54(c) (Payment Instructions).

77.    Penalties shall continue to accrue as provided in Paragraph 74 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 21 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 77(c);

c.    If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

78.    If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 77 until the date of payment; and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 76 until the date of payment.  If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States  may institute proceedings to collect the penalties and Interest.

79.  The payment of penalties and Interest, if any, shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

80.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

81.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS BY PLAINTIFF

82.    <u>Covenants for Settling Defendants by United States.</u>  In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in Paragraphs 84, 85, and 87, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106, 107(a) and 113 of CERCLA and Section 7003 of RCRA relating to the Site. Additionally, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 309 of the Clean Water Act, 33 U.S.C. § 1319, for civil penalties relating to discharges at the Site through the date of lodging this Consent Decree with the Court.  Except with respect to future liability, these covenants shall take effect upon the receipt by EPA of the payments required by Paragraph 51(a) Payment by Settling Defendants to EPA for Past Response Costs).  With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 47(b) of Section XIV (Certification of Completion).  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants extend only to Settling Defendants and do not extend to any other person; provided that the covenants extend to successors to the Settling Defendants to the extent that their liability, if any, arises solely from their status as successors to a Settling Defendant.

83.    <u>United States' Covenant for Settling Federal Agencies.</u>  In consideration of the payments that will be made by the United States, on behalf of Settling Federal Agencies, under this Consent Decree, and except as specifically provided in Paragraphs 84, 85, and 87, EPA covenants not to take administrative action against Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  EPA's covenant shall take effect upon the receipt by EPA of the payments required by Paragraph 51(b) (Payment by Settling Federal Agencies to EPA for Past Response Costs) and any Interest due thereon under Paragraph 51(b)(iii).  EPA's covenant extends only to the Settling Federal Agencies and does not extend to any other person.

84.    <u>United States' Pre-certification Reservations.</u>  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative

order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel Settling Federal Agencies, to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Completion of the Remedial Action: (i) conditions at the Site, previously unknown to EPA, are discovered, or (ii) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

85.    United States' Post-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies,  to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action (i) conditions at the Site, previously unknown to EPA, are discovered, or (ii) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

86.    For purposes of Paragraph 84, the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site, the administrative record supporting the ROD, and information provided to EPA pursuant to the 106 Order and listed in Appendix G to this Consent Decree.  The information listed in Appendix G, taken separately or together with other information described in the previous sentence, does not indicate that the Remedial Action will not be protective of human health or the environment.  For purposes of Paragraph 85, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

87.    General Reservations of Rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against the Settling Federal Agencies, with respect to all matters not expressly included within Plaintiff's covenant.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies, with respect to:

a.    claims based on a failure by Settling Defendants or Settling Federal Agencies to meet a requirement of this Consent Decree;

*United States v. Dawn and Newmont*
*Consent Decree Page 39*

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based on the ownership of the Site by Settling Defendants or Settling Federal Agencies when such ownership commences after signature of this Consent Decree by the Settling Defendants ;

d.      liability based on the operation of the Site by Settling Defendants or Settling Federal Agencies when such operation commences after signature of this Consent Decree by Settling Defendants and does not arise solely from Settling Defendants' performance of the Work;

e.      liability based on Settling Defendants' or Settling Federal Agencies' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, commencing after signature of this Consent Decree;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      criminal liability; and

h.      liability for violations of federal or state law which occur during or after implementation of the Work.


In addition, notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants (but not Settling Federal Agencies) with respect to:

i.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans).

88.      <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Defendants have (i) ceased implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 15 days, or any longer period determined by EPA, within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the notice period specified in Paragraph 88(a), Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's

issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 88(b). Funding of Work Takeover costs is addressed under Paragraph 45.

        c.      Settling Defendants may invoke the procedures set forth in Paragraph 67 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 88(b). However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 88(b) until the earlier of (i) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Paragraph 67 (Record Review), requiring EPA to terminate such Work Takeover.

      89.      Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserve all rights to take any and all response actions authorized by law.

### XXII.  Covenants by Settling Defendants and settling federal agencies

      90.      <u>Covenant Not to Sue by Settling Defendants</u>.  Subject to the reservations in Paragraph 92, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site and this Consent Decree, including, but not limited to:

        a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

        b.      any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Site and this Consent Decree; or

        c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

      91.      <u>Covenant by Settling Federal Agencies</u>.  Settling Federal Agencies agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site and this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300.)

92.     Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any "employee of the government," as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans, reports, other deliverables or activities.  Settling Defendants also reserve, and this Consent Decree is without prejudice to,  CERCLA claims against Settling Federal Agencies in the event: (i) any claim is asserted or order is issued by the United States against Settling Defendants pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs) other than in Paragraphs 87(a) (claims for failure to meet a requirement of the Decree), 87(g) (criminal liability), 87(h) (violations of federal/state law during or after implementation of the Work), and 87(i), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation; or (ii) any claim is asserted by a natural resource trustee other than the United States against Settling Defendants for damages for injury to, destruction of, or loss of natural resources, or for the costs of any natural resource damage assessments, but only to the extent that Settling Defendants' claim arises from the same damages or costs that are sought from the Settling Defendants.

93.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

94.     Claims Against *De Minimis* and Ability to Pay Parties.  Settling Defendants agree not to assert any claim or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Section 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement or a final settlement based on limited ability to pay with EPA with respect to the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

95.     Except as provided in Paragraph 94 (Claims Against *De Minimis*/Ability to Pay Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraph 94 (Claims Against *De Minimis*/Ability to Pay Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any

person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

96.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant and the United States are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person; provided, however, that: (i) with respect to Paragraph 87(i), if the United States exercises its rights against Settling Defendants, the "matters addressed" in this Consent Decree will no longer include Settling Defendants' liability under that Paragraph; and (ii) with the exception of Paragraph 87(i), if the United States exercises rights against Settling Defendants or if EPA or the federal natural resource trustee asserts rights against Settling Federal Agencies under the reservations in Section XXI (Covenants by Plaintiff) other than in Paragraph 87(a) (claims for failure to meet a requirement of the Decree), 87(g) (criminal liability), or 87(h) (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

97.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

98.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within 10 days of service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

99.    <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

XXIV.  ACCESS TO INFORMATION

100.    Subject to Paragraph 101, Settling Defendants shall provide to EPA and the Tribe, upon request by EPA, copies of all records, reports, documents, and other information (including records, reports, documents and other information in electronic form) (hereinafter referred to as

"Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendants shall also make available to EPA for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

101.    <u>Business Confidential and Privileged Documents</u>.

a.    Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.    Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

c.    No records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States on the grounds that they are privileged or confidential.

102    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  <span style="font-variant:small-caps">Retention of Records</span>

103.    Until 10 years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 48(b) of Section XIV (Certification of Completion), each Settling Defendant shall preserve and retain all non-identical copies of Records(including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner

to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records(including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

104.    The United States acknowledges that each Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

105.    At the conclusion of this record retention period, Settling Defendants shall notify the United States and the Tribe at least 90 days prior to the destruction of any such Records, and, upon request by the United States or the Tribe, Settling Defendants shall deliver any such Records to EPA or the Tribe.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide Plaintiff with the following:  (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.  However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

106.    Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI.  NOTICES AND SUBMISSIONS

107.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, Settling Federal Agencies, the Tribe, and Settling Defendants.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

<u>As to the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ #90-11-3-1749


Chief, Environmental Defense Section
United States Department of Justice
Environment and Natural Resource Division
P.O. Box 23986
Washington, D.C.  20026-3986
Re: DJ #90-11-6-17682/1


<u>As to EPA</u>:

Daniel D. Opalski, Director
Office Of Environmental Cleanup
U.S. Environmental Protection Agency
 Region 10
Mail Stop ECL-117
1200 Sixth Avenue, Suite 900
Seattle, WA 98101


EPA Project Coordinator

Ellen Hale, Remedial Project Manager
U.S. Environmental Protection Agency
 Region 10
Mail Stop ECL-113
1200 Sixth Avenue, Suite 900

Seattle, WA 98101
hale.ellie@epa.gov

As to the Tribe:

Shannon D. Work, P.C.
P.O. Box 3409
Coeur d' Alene, ID 83816

As to the Settling Defendants:

Settling Defendants' Project Coordinator

Newmont USA Limited
6363 Fiddler's Green Circle
Greenwood Village, CO 80111

Nancy Lipson
Newmont USA Limited
6363 Fiddler's Green Circle
Greenwood Village, CO 80111

John K. Mudge
President
Dawn Mining Company
1655 Mountain City Highway
Elko, NV 89801

As to the Settling Federal Agencies:

Colleen Kelly
Office of the Regional Solicitor
Pacific Northwest Region
U.S. Department of the Interior
805 SW Broadway, Suite 600
Portland, OR 97205

## XXVII. RETENTION OF JURISDICTION

108.     This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for

such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII. APPENDICES

109.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of Settling Federal Agencies.

"Appendix E" is the form trust agreement.

"Appendix F" is the form of other performance guarantees.

"Appendix G" is the other information and conditions known to EPA.

## XXIX. COMMUNITY RELATIONS

110.    Settling Defendants shall cooperate with EPA and the Tribe in providing information regarding the Work to the public.  As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and shall participate in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

111.    The costs incurred by the United States related to any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX. MODIFICATION

112.    Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any material modification to the SOW, the United States will provide the Tribe with a reasonable opportunity to review and comment on the proposed modification.

113.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXI.  Lodging and Opportunity for Public Comment

114.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

115.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII.  Signatories/Service

116.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

117.    Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

118.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.

## XXXIII.  Final Judgment

119.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

120.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 17th DAY OF January, 2012

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Newmont USA Limited and Dawn Mining Company LLC, relating to the Midnite Mine Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

8/27/11
_____
Date

Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20044-7611530

9/29/204
_____
Date

Paul Gormley
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver CO 80202
Telephone: (303) 844-1379
Paul.gormley@usdoj.gov

9/29/11
_____
Date

Mark A. Nitczynski
Trial Attorney
Environmental Defense Section
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver CO 80202

*United States v. Dawn and Newmont*
*Consent Decree Page 51*

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Newmont USA Limited and Dawn Mining Company LLC, relating to the Midnite Mine Superfund Site.

8/24/2011
Date

Daniel D. Opalski, Director
Office of Environmental Cleanup
U.S. Environmental Protection Agency
  Region 10
1200 Sixth Avenue, Suite 900
Seattle, WA  98101


8/24/11
Date

Lisa A. Castañon
Assistant Regional Counsel
U.S. Environmental Protection Agency,
  Region 10
1200 Sixth Avenue, Suite 900
Seattle, WA 98101

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Newmont USA Limited and Dawn Mining Company LLC, relating to the Midnite Mine Superfund Site.

**FOR NEWMONT USA LIMITED**

8·23·2011
Date

Stephen P. Gottesfeld
Vice President
Newmont USA Limited
6363 South Fiddler's Green Circle
Greenwood Village, CO 80111

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Newmont USA Limited and Dawn Mining Company LLC, relating to the Midnite Mine Superfund Site.

**FOR DAWN MINING COMPANY LLC**

8·23·2011
Date

David A. Baker
President
Dawn Mining Company, LLC
6363 South Fiddler's Green Circle
Greenwood Village, CO 80111